IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NGOC RON MENDELL,<br><br>Plaintiff,<br><br>v.<br><br>MEGAN J. BRENNAN, Postmaster General, United States Postal Service,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING UNITED STATES POSTAL SERVICE'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:18-CV-726 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on a Motion for Summary Judgment filed by the United States Postal Service ("USPS"). For the reasons discussed below, the Court will grant the Motion.

I. BACKGROUND

In late 2016, Plaintiff took a temporary assignment to serve as the Postmaster of the Pleasant Grove Post Office. Plaintiff later transferred to the Pleasant Grove Post Office on a permanent basis. Plaintiff is Asian and of Vietnamese descent.

Plaintiff asserts that after he became Postmaster, local Labor Relation agents and the Western Area Labor Relations sought to sabotage his efforts to fix the problems that were occurring at the Pleasant Grove Post Office. Plaintiff complains that certain decisions he made were overruled by his superiors and that they otherwise interfered with his ability to run the Post Office. Plaintiff also complains about a Climate Assessment and a follow-up assessment that were completed in response to the filing of two class-action grievances. Plaintiff contends that

1

these actions interfered with his management of the Pleasant Grove Post Office and constitute discrimination based on race and national origin.

Plaintiff eventually transferred to fill the position of Postmaster at the Orangeville, Utah Post Office effective October 31, 2017.  The Orangeville position is a level 18 grade position, while Plaintiff's previous position was a level 21 grade.  Plaintiff's pay was reduced in February 2018 to reflect this lower grade level.  Plaintiff contends this salary adjustment was made due to his EEO activity and his refusal to rescind a complaint he filed with the National Labor Relations Board.

In addition, Plaintiff asserts claims for constructive demotion and hostile work environment.  Defendant seeks dismissal of all of Plaintiff's claims.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]

---

[1] Fed. R. Civ. P. 56(a).

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

III.  DISCUSSION

USPS seeks summary judgment on Plaintiff's claims of race and national origin discrimination and retaliation for prior EEO activity.  Both of these claims can be established through direct evidence or circumstantial evidence.[4]  Where, as here, Plaintiff is relying on circumstantial evidence, courts use the framework set out in *McDonnell Douglas* to analyze discrimination and retaliation claims at summary judgment.[5]  Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination or retaliation.[6]  If the plaintiff establishes a prima facie case, then the defendant has the burden to articulate some legitimate, nondiscriminatory reason for the action.[7]  Then the plaintiff has an opportunity to show, by a preponderance of the evidence, that the reasons the defendant gave were a pretext for discrimination or retaliation.[8]

A.  DISCRIMINATION

   *1.   Prima Facie Case*

Title VII prohibits an employer from discriminating against any individual because of "race, color, religion, sex, or national origin."[9]  "To make out a prima facie case of discrimination, [Plaintiff] must demonstrate (1) membership in a protected class, (2) adverse

---

[4] *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114 (10th Cir. 2007); *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016).

[5] *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008).

[6] *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Stover v. Martinez*, 382 F.3d 1064, 1070–71 (10th Cir. 2004).

[7] *C.R. England, Inc.*, 644 F.3d at 1038; *Stover*, 382 F.3d at 1071.

[8] *C.R. England, Inc.*, 644 F.3d at 1038; *Stover*, 382 F.3d at 1071.

[9] 42 U.S.C. § 2000e-2(a)(1).

employment action, and (3) disparate treatment among similarly situated employees."[10]  Plaintiff is Asian and of Vietnamese descent.  Therefore, there is no dispute as to the first element.  However, Defendant argues that Plaintiff cannot meet the other two elements.

          *a.*     *Adverse Employment Action*

"Adverse employment action includes 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"[11]  However, "not everything that makes an employee unhappy is an actionable adverse action."[12]  For example, the Tenth Circuit does not consider "a mere inconvenience or an alteration of job responsibilities to be an adverse employment action."[13]  But "we consider acts that carry 'a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects.'"[14]

Plaintiff contends that management and labor took various actions that interfered with his ability to manage in the way he wanted.  In April and June 2017, two class action grievances were filed alleging a hostile work environment at the Pleasant Grove Post Office.[15]  In response, the Postal Service conducted a Climate Assessment. The Climate Assessment was conducted by

---

[10] *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

[11] *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (quoting *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032–33 (10th Cir. 2004)).

[12] *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)).

[13] *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998) (citation and internal quotation marks omitted).

[14] *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004) (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)).

[15] Docket No. 23 Exs. A, E.

Jimmy Ball and Jeffry Duba, both of whom were stationed with the Western Area Labor Relations. The purpose of the Climate Assessment was to focus on the environment of the Post Office and was not directed at any particular individual.[16] The Climate Assessment made certain recommendations and a follow-up assessment was conducted in November 2017, after Plaintiff transferred to the Orangeville Post Office.[17]

Plaintiff next complains about two grievances that were settled in relation to discipline that he had issued or approved as Postmaster. Relatedly, Plaintiff takes issue with an extension of time that was granted at the request of a union official. Plaintiff argues that these actions show that management and labor were not backing him up and made it more difficult for him to impose discipline.

Plaintiff also points to two other actions—an issue with an employee's uniform and the selection of a union steward—that he agrees are not adverse employment actions. Therefore, they will not be discussed further.

None of these actions caused a significant change in Plaintiff's employment status. Until his transfer to the Orangeville Post Office, Plaintiff remained Postmaster with the same responsibilities, pay, and benefits. Plaintiff argues "that interfering with his ability to manage appropriately could definitely impact his status and career mobility."[18] However, this harm is purely speculative, which does not constitute adverse employment action.[19] There is no

---

[16] *Id.* Ex. F, at 2 ("The focus of this report is on the Workplace Climate in general.").

[17] *Id.* Ex. F–H.

[18] Docket No. 28, at 34.

[19] *Aquilino v. Univ. of Kan.*, 268 F.3d 930, 936 (10th Cir. 2001) ("Speculative harm does not constitute adverse employment action.").

evidence that the actions of which Plaintiff complains did or would have any bearing on his status and career mobility. Indeed, Plaintiff has remained a Postmaster throughout the relevant period at three different Post Offices, which suggests that these actions had no ill effects. Though the actions of his supervisors and of labor may have made Plaintiff's efforts to improve what he saw as the failings of the Pleasant Grove Post Office more difficult, they are not sufficient to constitute adverse employment actions.

Plaintiff also argues that he was subject to a constructive demotion and a significant cut in pay. Plaintiff contends that this was "definitely" an adverse action because it directly affected his status and pocketbook.[20] Courts have recognized that a constructive demotion may constitute an adverse employment action.[21] Similarly, a reduction in pay may be considered an adverse employment action. Therefore, the Court will move on to the next element.

### b. Disparate Treatment

To establish an inference of discrimination, plaintiffs, like Mendell, can show they were treated differently than similarly situated employees who were not in the protected class.[22] In the Tenth Circuit, "similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."[23] "[A] court should also compare the relevant employment circumstances, such as work history and company

---

[20] Docket No. 28, at 36.

[21] *See Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 717–18 (8th Cir. 2003); *Simpson v. Borg-Warner Auto. Inc.*, 196 F.3d 873, 876 (7th Cir. 1999); *Sharp v. City of Houston*, 164 F.3d 923, 933–34 (5th Cir. 1999).

[22] *See* Docket No. 28, at 33 n.3.

[23] *Riggs*, 497 F.3d at 1117 (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)).

6

policies, applicable to the plaintiff and the intended comparable employees."[24] "Moreover, even employees who are similarly situated must have been disciplined for conduct of comparable seriousness in order for their disparate treatment to be relevant."[25] "[W]hether two employees are similarly situated ordinarily presents a question of fact for the jury," but "at summary judgment, the court must determine whether plaintiff has adduced enough evidence to support a finding that the [other employee] and plaintiff were sufficiently similarly situated to support an inference of discrimination."[26]

Plaintiff states that other Postmasters received complaints "but no investigations" were conducted as to them.[27] This statement does not provide a sufficient basis from which a reasonable trier of fact could draw an inference of discrimination. There is no information as to the race/national origin of the other Postmasters, the complaints they received, or the actions taken in response to those complaints. Additionally, this misstates the actions taken by USPS in this case. Plaintiff was never the subject of an investigation. Rather, the USPS conducted a Climate Assessment as a result of two class action complaints alleging a hostile work environment at the Pleasant Grove Post Office. This Climate Assessment was not an "investigation" of Plaintiff but a review of the overall climate of the Post Office. Plaintiff provides no information as to whether other Climate Assessments were conducted at the other

---

[24] *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (quoting *Aramburu*, 112 F.3d at 1404).

[25] *Id.*

[26] *Riggs*, 497 F.3d at 1117 (internal citations and quotation marks omitted) (second alteration in original).

[27] Docket No. 28-2 ¶¶ 10–11.

allegedly comparable Post Offices. Nor does he discuss whether any of the other Postmasters were subjected to the other actions of which he complains.

Plaintiff also states that his manager told him that this was "nothing like he ha[d] seen before."[28] Putting aside questions about the admissibility of this statement, it does little to support an inference that Plaintiff was treated differently because of his race/national origin. While Plaintiff speculates that the actions taken were motivated by his race, this is not sufficient to withstand summary judgment.[29]

    *2.     Legitimate, Non-Discriminatory Reasons*

Plaintiff concedes that Defendant has provided legitimate, non-discriminatory reasons for its actions. Specifically, the Climate Assessment was conducted in response to two class action grievances complaining of a hostile work environment at the Pleasant Grove Post Office. The focus of the assessment was to gauge the climate of the Post Office and to provide certain recommendations as to how to improve morale.

With respect to the settling of grievances, Plaintiff admits that employees routinely file grievances and that management has full authority to settle those grievances.[30] Defendant has provided evidence that the majority of grievances are settled.[31] As to the two specific grievances Plaintiff identifies, Defendant has presented good reasons why they were settled, specifically that

---

[28] Docket No. 28-1, at 17.

[29] *See Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1491 (10th Cir. 1995) (holding that plaintiff's speculation of discriminatory motive insufficient to withstand summary judgment).

[30] Docket No. 23 Ex. C, at 8, 17; *Id.* Ex. L.

[31] *Id.* Ex. B, at 8.

8

they would not be successful if they had moved forward either because of procedural or factual issues.[32]

With regard to the extension being granted, Defendant has presented evidence that such extensions were routinely granted as a matter of professional courtesy.[33]

Finally, with respect to Plaintiff's transfer to the Orangeville Post Office and his reduction in pay, Defendant has provided evidence that Plaintiff voluntarily made the transfer and that the reduction in pay was required by the USPS pay policy.

*3.   Pretext*

Having presented legitimate, non-discriminatory reasons for its actions, the burden shifts to Plaintiff to demonstrate that these professed reasons are a pretext for discrimination.

"The pretext prong . . . permits a plaintiff employee to raise a triable inference that the stated reasons for the adverse action underlying an employer's ostensibly honest belief are a pretext for discrimination."[34]  "A plaintiff may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision."[35]  "This is often accomplished by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence."[36]  "A plaintiff

---

[32] *Id.* Ex. C, at 5; *Id.* Ex. K; *Id.* Ex. S.

[33] *Id.* Ex. B, at 12–14; *Id.* Ex. U.

[34] *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1311 (10th Cir. 2017).

[35] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (citation and internal quotation marks omitted).

[36] *Id.* (citation and internal quotation marks omitted).

may also show pretext by demonstrating the defendant acted contrary to a written company policy, an unwritten company policy, or a company practice when making the adverse employment decision affecting the plaintiff."[37]

"In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision, we do not look to the plaintiff's subjective evaluation of the situation."[38] Moreover, the Court "may not second guess the business judgment of the employer."[39] "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."[40] "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."[41]

Here, there is no evidence that the reasons proffered by Defendant were false or unworthy of belief. Plaintiff speculates that these actions were taken based on his race and national origin "[b]ecause all of the other actors were white."[42] However, there is no evidence to support this belief and, indeed, there is undisputed testimony that Plaintiff's race and national origin played no role in the relevant decisions.

---

[37] *Id.* (citation and internal quotation marks omitted).

[38] *C.R. England, Inc.*, 644 F.3d at 1044 (citation and internal quotation marks omitted).

[39] *Dewitt*, 845 F.3d at 1307 (citation and internal quotation marks omitted).

[40] *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004) (internal quotation marks and alterations omitted).

[41] *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

[42] Docket No. 28, at 39.

Plaintiff also takes issue with the rationale proffered by USPS for settling grievances and overturning other decisions. However, this is nothing more than an effort to have the Court second guess the reasons why USPS made certain decisions. This, the Court cannot do.

Finally, as to his transfer and reduction in salary, Plaintiff states that it was his understanding "that the pay policy at issue [was] not a rule."[43] However, Plaintiff provides nothing to support this belief. Plaintiff also contends that the human resources manager reduced his pay because she was upset that he refused to drop his NLRB complaint. But, again, there is no evidence except Plaintiff's subjective beliefs to support this claim. Because of this, Plaintiff's discrimination claim fails.

B.  RETALIATION

   1.  *Prima Facie Case*

A retaliation claim requires a plaintiff to show that "retaliation played a part in the employment decision."[44] The plaintiff must establish a prima facie case of retaliation by showing "(1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action."[45] Plaintiff engaged in protected activity. However, USPS argues that Plaintiff's claim fails on the second and third elements.

---

[43] *Id.* at 28.

[44] *Hansen*, 844 F.3d at 925 (quoting *Fye*, 516 F.3d at 1224).

[45] *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001) (citation omitted).

11

####    a.    Adverse Employment Action

"To be materially adverse, an action must be sufficient to 'dissuade [ ] a reasonable worker from making or supporting a charge of discrimination.'"[46] "Title VII protects individuals 'not from all retaliation' but only from retaliation 'that produces an injury or harm.'"[47] This requires injury rising to a requisite "level of seriousness."[48] While most of Plaintiff's complaints do not rise to this level for the reasons discussed above, Plaintiff's reduction in pay is sufficient to meet this element.

####    b.    Causal Connection

Plaintiff must next prove "that a causal connection existed between the protected activity and the materially adverse action."[49] "A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive."[50] Plaintiff relies on the temporal proximity between his EEO activity and the alleged adverse actions.[51]

"A retaliatory motive may be inferred when an adverse action closely follows protected activity. However, unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish

---

[46] *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) (alteration in original).

[47] *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1087 (10th Cir. 2007) (quoting *White*, 548 U.S. at 67).

[48] *Id.* (citation and internal quotation marks omitted).

[49] *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (citation and internal quotation marks omitted).

[50] *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (citation and internal quotation marks omitted).

[51] Docket No. 28, at 40.

causation."[52] Specifically, the Tenth Circuit has "held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation."[53] However, a period of three months is insufficient and requires additional evidence.[54]

Plaintiff filed a grievance in September 2017. Plaintiff's reduction in pay took place in February 2018. Because the delay between the filing of the grievance and the reduction is greater than three months, Plaintiff must provide additional evidence to establish causation.

To support his claim, Plaintiff argues that the human resources manager adjusted his salary after he refused to drop his NLRB complaint. However, there is no evidence to support this claim. Further, Plaintiff's salary adjustment was made by the Postal Services Shared Service Center, not the human resources manager. There is nothing to indicate that those responsible for implementing the salary change were aware of Plaintiff's EEO activity.

Plaintiff also attempts to support his claim by arguing that he was being treated differently than other similarly situated Postmasters.[55] However, as discussed, Plaintiff fails to provide anything more than conclusory, self-serving statements to support this claim. Without more, Plaintiff has failed to demonstrate a causal connection.

Plaintiff further argues that "after he stated he was going to file an EEO Complaint, the Western Area Labor Relations and local Labor Relations agents continued to sabotage his efforts

---

[52] *Piercy*, 480 F.3d at 1198 (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

[53] *Anderson*, 181 F.3d at 1179.

[54] *Id.* ("[W]e have held that a three-month period, standing alone, is insufficient to establish causation.").

[55] Docket No. 28, at 40.

13

to impose order and discipline in the Pleasant Grove Office."[56] However, even under Plaintiff's construction, these actions were a mere continuation of actions that began prior to his threat to file an EEO complaint. As such, they do not provide evidence of temporal proximity.[57] For example, the follow-up Climate Assessment was conducted after Plaintiff filed his EEO complaint. But that assessment was contemplated by the initial Climate Assessment, and there is no evidence that Plaintiff's EEO activity had any role in the timing of when that assessment was conducted.

Moreover, while Plaintiff alleges that he informed Western Area Labor Relations agents that he planned to file a complaint in June 2017, there is no evidence that these individuals ever knew that he filed such a complaint. Indeed, both stated that they were unaware of any EEO activity by Plaintiff. A plaintiff must show "that the individual who took adverse action against [him or her] knew of the employee's protected activity."[58] Plaintiff has failed to provide this evidence.

---

[56] *Id.*

[57] *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997) ("Hilti issued oral and written warnings about the consequences of poor attendance both before and after August 3, 1994, when she filed the charge of discrimination. The additional warnings, followed by discharge on January 16, 1995, simply completed the disciplinary process already set in motion."); *Mitchell v. Kan. City Kan. Sch. Dist.*, 714 F. App'x 884, 888 (10th Cir. 2017) ("[T]he temporal proximity between Mr. Mitchell's EEOC charge and his termination a month and a half later is immaterial under these circumstances because, as indicated above, the school district had already initiated disciplinary proceedings as a result of the October 30, 2015 incident involving the police.").

[58] *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007) (quoting *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993)).

   2. *Legitimate, Non-Retaliatory Reasons*

  Assuming that Plaintiff could present a prima facie case, Defendant has provided legitimate, non-retaliatory reasons for its actions. With respect to the change in pay, Defendant has provided evidence that such a reduction was required under USPS pay policy due to Plaintiff's voluntary transfer to the Orangeville Post Office.[59] While Plaintiff disputes that his transfer was voluntary, he has failed to show that he was constructively demoted, as will be discussed in more detail below.

   3. *Pretext*

  For substantially the same reasons already discussed, Plaintiff has failed to show that the actions taken by Defendant were a pretext for retaliation. As to the reduction in pay, Plaintiff asserts his belief that the pay policy that resulted in his pay reduction was not a rule. However, he provides no evidence to support this belief. Therefore, this claim fails.

C. CONSTRUCTIVE DEMOTION/HOSTILE WORK ENVIRONMENT

  Though less than clear, Plaintiff appears to assert constructive demotion and hostile work environment claims. Defendant argues these two claims were inadequately pleaded. The Court can assume for the purposes of this Motion that these claims are sufficiently pleaded in the Complaint. Nevertheless, they fail on the merits.

  Plaintiff's constructive demotion and hostile work environment claims are similar and will be discussed together.[60] The Court considers Plaintiff's constructive demotion claim using

---

[59] Docket No. 23 Exs. AA–BB.

[60] The Court notes that the standard for a constructive demotion/discharge claim is greater than that for a hostile work environment claim. *See Zisumbo v. McCleodUSA Telecomms. Servs., Inc.*, 154 F. App'x 715, 729 (10th Cir. 2005).

the same standard as a claim for constructive discharge.[61] "Title VII encompasses employer liability for a constructive discharge."[62] "The plaintiff's burden in establishing constructive discharge is substantial."[63] "A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign."[64] "The conditions of employment must be objectively intolerable; the 'plaintiff's subjective views of the situation are irrelevant.'"[65]

In evaluating a hostile work environment claim, the Court considers the work atmosphere both objectively and subjectively[66] while keeping in mind that Title VII is not "a general civility code for the American workplace."[67] To that end, "run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."[68] The United States Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."[69] These standards are "sufficiently demanding" to ensure that they "filter out complaints attacking

---

[61] *See Fenney*, 327 F.3d at 717.

[62] *Penn. State Police v. Suders*, 542 U.S. 129, 143 (2004).

[63] *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 980 (10th Cir. 2008).

[64] *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004).

[65] *Sanchez*, 164 F.3d at 534 (quoting *Yearous v. Niobrara Cty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997)).

[66] *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998).

[67] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

[68] *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012).

[69] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."[70]

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."[71]  The harassment's severity and pervasiveness are "evaluated according to the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[72]

Plaintiff claims that the actions of upper management and labor relations officials interfered with his ability to manage his Post Office.  While undoubtedly frustrating, the actions of which Plaintiff complains hardly rise to the level necessary to maintain a claim for constructive demotion or hostile work environment.  Instead, the facts of this case show a series of run-of-the-mill disputes between a manager, his supervisors, and labor.  Therefore, these claims fail.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 22) is GRANTED.

---

[70] *Id.* (citation and internal quotation marks omitted).

[71] *Oncale*, 523 U.S. at 81 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

[72] *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (citations and internal quotation marks omitted).

DATED this 11th day of December, 2020.

BY THE COURT:

Ted Stewart
United States District Judge